IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES ROBERT BENNETT,

        Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

OPINION AND ORDER

17-cv-809-slc

Plaintiff James Bennett is seeking review of a final decision by defendant Nancy Berryhill, Acting Commissioner of Social Security, denying his claim for disability insurance benefits (SSDI) under the Social Security Act. 42 U.S.C. § 405(g). Bennett argues that the administrative law judge (ALJ) who denied his claim did not account adequately for his moderate limitations in concentration, persistence or pace or properly consider the Veteran's Administration (VA) finding that he was 100% disabled.

For the reasons explained below, I am remanding this case so the ALJ can account properly for Bennett's cognitive difficulties in his residual functional capacity assessment and hypothetical to the vocational expert. Although it is unnecessary to determine whether the ALJ committed reversible error in considering the VA's finding, he should take care on remand to consider the finding and how much weight to give it.

The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case:

## RELEVANT FACTS

Bennett applied for SSDI benefits on February 20, 2015, alleging that he had been disabled since January 30, 2015 as a result of post traumatic stress disorder (PTSD). AR 14, 81. Bennett is a veteran of the United States Air Force who was released from service as a combat medic in 2005. In 2015, the Veteran's Administration (VA) determined that Bennett was 70% disabled and unemployable due to his service-connected disability. *Id.* at 79. He worked as a correctional officer in a federal prison from 2002 to February 2015, when he was hospitalized for worsening anxiety that was brought on in part by his divorce. *Id.* at 21, 83.

## I. Medical Evidence

Critical to Bennett's appeal are the opinions of two state agency psychologists who reviewed his medical record and completed mental residual functional capacity assessments for him. During the initial review of Bennett's application for benefits, Dr. Roger Rattan concluded on June 29, 2015 that Bennett had moderate limitations in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychological-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. AR 87-89. In response to a question asking him to "explain in narrative form the sustained concentration and persistence capacities," Rattan wrote that Bennett "has [symptoms] that limit him to unskilled work." *Id.* at 88.

On October 14, 2015, at the reconsideration level of review, Dr. Jack Spear agreed with all of Dr. Rattan's specific findings regarding memory, understanding, attention, and concentration. *Id.* at 99, 101-02. In the narrative sections of the form, Dr. Spear wrote that Bennett "is able to focus & attend to simple 2-3 step instructions, but may have increasing difficulty w/ more complex tasks" and "would be able to perform at least unskilled work." *Id.* at 102-03.

## II. Administrative Proceedings

After the local disability agency denied his claim initially and upon reconsideration, on March 10, 2017, Bennett had a hearing before ALJ John Martin. AR 14. Bennett was represented by counsel at the hearing at which he and a vocational expert testified. *Id.*

On May 30, 2017, the ALJ issued his decision denying Bennett's application. AR 14-26. Applying the familiar five-step sequential evaluation process, the ALJ determined that Bennett was severely impaired by PTSD, bilateral knee degenerative joint disease, and obesity. *Id.* at 16. In considering whether Bennett's mental impairments satisfied the criteria of "paragraph B" at step three, the ALJ determined that "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations." *Id.* at 20. The ALJ did not explain the basis of this finding but noted that he could not "completely rely" on the paragraph B assessments of the state psychological consultants because "the agency significantly revised this criteria effective January 2017." *Id.* at 18. However, the ALJ noted that "the decrease in 'paragraph B' severity from the initial to the reconsideration level [of review] was consistent with the clinical records, which

3

demonstrated that claimant was responding well to therapy and had begun on focusing on improving his functioning." *Id.*

The ALJ determined that despite Bennett's severe impairments, he retained the RFC to perform light work limited to simple, routine, and repetitive tasks; no production rate pace such as that associated with assembly line work; simple work-related decisions; and occasionally responding appropriately to the public. AR 20-21. The ALJ stated that he accounted for Bennett's self-reports of trouble completing tasks, remembering things, understanding, concentrating, and following instructions by limiting Bennett to simple, routine, and repetitive tasks and precluding him from production rate work. *Id.* at 23.

In reaching his decision, the ALJ acknowledged that the VA had assessed Bennett with a 70% disability rating in 2015 and was paying him benefits at the 100% rate because the agency found him to be unemployable. *Id.* at 22. The ALJ stated that he considered the VA rating as one of many factors relevant to his decision but that it was not binding on him because the VA uses a different set of rules than the SSA. *Id.*

At the final stage of the evaluation process, the ALJ relied on the testimony of the vocational expert, who testified that a person with Bennett's RFC would be able to work as a machine feeder/pad machine off bearer, production worker/helper, or stock clerk/marker. AR 25.

## OPINION

**I. CPP Limitations**

Bennett's first argument is that the ALJ's residual functional capacity assessment and hypothetical question to the vocational expert did not account adequately for his finding that

Bennett had moderate limitations in concentration, persistence or pace. The Court of Appeals for the Seventh Circuit has made clear that an ALJ must orient the vocational expert to the claimant's limitations in concentration, persistence or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[T]he ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.") Although the administrative law judge does not need to use the magic words "concentration, persistence or pace," the record must show that the vocational expert was somehow aware of those limitations. *Yurt v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2014). According to the Seventh Circuit, an ALJ must expressly address the limitations in the hypothetical unless one of three exceptions applies: (1) the VE was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the VE of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017).

The Commissioner does not argue that the first two *Lanigan* exceptions apply in this case and it does not appear that they do. The ALJ did not inform the VE that Bennett had moderate limitations in concentration, persistence or pace, and he did not describe Bennett's particular cognitive difficulties to him. There is also no evidence that the vocational expert reviewed the medical record independently. *Lanigan*, 865 F.3d at 565 ("[Al]though the vocational expert was present when Lanigan testified at the hearing, that testimony was too limited to provide a complete and full picture of his mental limitations.").

In his hypothetical to the VE, the ALJ repeated the general functions or tasks from the RFC assessment that he found Bennett could perform: simple, routine, repetitive, and not production rate. Although the ALJ stated that these tasks accounted for Bennett's moderate cognitive difficulties, the Court of Appeals for the Seventh Circuit has held repeatedly that limitations to "simple," "routine," or "repetitive" work do not address a claimant's general deficiencies in concentration, persistence or pace. *O'Connor-Spinner*, 627 F.3d at 620; *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (simple, routine tasks did not account for limited ability to understand instructions); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) ("simple, routine" tasks did not adequately account for "impairment in concentration"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) ("simple, unskilled work" does not account for difficulty with memory, concentration, or mood swings). Similarly, the ALJ failed to define or quantify "not production rate," and "[w]ithout such a definition, it would have been impossible for the [vocational expert] to assess whether a person with [plaintiff's] limitations could maintain the pace proposed." *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015).

The Commissioner contends that the RFC assessment and hypothetical were sufficient because they tracked the language that the state agency psychologists, Drs. Rattan and Spear, used in the narrative portion of their worksheets. To support this contention, the Commissioner relies on three Seventh Circuit cases, two published and one unpublished. *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Capman v. Colvin*, 617 Fed. Appx. 575, 578-79 (7th Cir. 2015) ("[T]he ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with

6

the findings in the Section I worksheet."); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (accepting ALJ's RFC assessment based on psychologist's evaluation that "went further" and "translated" Section I observations into mental RFC finding in Section III).

In this case, the state agency psychologists stated with respect to sustained concentration and persistence limitations that Bennett could perform "unskilled work" and follow "2-3 step instructions." The ALJ did not include these specific terms in his RFC or hypothetical question, but his use of "simple, routine, and repetitive tasks" and "simple work-related decisions" are consistent with unskilled work, which SSA defines as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . usually . . . in 30 days." 20 C.F.R. § 404.1568(a). Indeed, in *Capman*, 617 Fed. Appx. at 577, 579, the court of appeals upheld a RFC limiting the claimant to simple and routine tasks and limited interactions with others because it was consistent with the state agency psychologist's narrative opinion that the claimant could handle the tasks and stress of unskilled work.

However, Dr. Rattan and Dr. Spear also found that Bennett had an additional moderate limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods, but neither doctor commented on that particular limitation in the narrative section of their worksheets. The SSA definition of unskilled work does not discuss pace at all, so the psychologists' general reference to unskilled work, without more, does not adequately encapsulate and translate their observations that Bennett has moderate work pace limitations. *See Yurt*, 758 F.3d at 854, 858 (hypothetical limiting claimant to unskilled work was inadequate because it did not reflect all of claimant's limitations even though state psychologist noted that claimant had not lost capacity for unskilled work). As explained above, although the ALJ

7

attempted to account for Bennett's difficulties in work pace, the ALJ failed to define "not production rate" for the VE, making it impossible for the VE to know what type of work Bennett could perform. Accordingly, I am reversing the ALJ's decision and remanding this case so the ALJ can account for all of Bennett's limitations in concentration, persistence and pace in the RFC and hypothetical question to the VE.

II. VA Disability Determination

Bennett's second challenge is to the ALJ's evaluation of the VA's determination that he is unemployable due to his PTSD. As the ALJ recognized in his decision, the treatment of other governmental agencies' disability findings is not binding on SSA. *See* SSR 06-03p ("a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us."). However, the ruling acknowledges that such decisions "may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies on their rules." *Id.*

Although the Seventh Circuit has said that an ALJ "should give" a VA disability determination "some weight," *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006), it has not followed other circuits in requiring ALJs to explain the weight given the VA finding and the reasons for rejecting it. *Willems v. Colvin*, 2014 WL 996503, at *1 (E.D. Wis. Mar. 13, 2014) (citing *e.g., Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)). However, the Seventh Circuit has since noted that it was an "oversight" for an ALJ to fail to analyze and weigh the VA's determination that an applicant was totally disabled. *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir.

2015) (noting different SSA and VA criteria for determining disability but adding that "the differences are small").[1]

Here, the ALJ mentioned the VA's rating for Bennett's PTSD, but he did not say what weight he gave the rating or give any specific reason for not adopting it, other than the fact that the VA disability rating system is governed by different rules than the SSA. Although it is not clear that the ALJ's failure to analyze the VA's finding was reversible error, the finding is at least potentially relevant to the ALJ's decision and its significance should be considered on remand.

## ORDER

IT IS ORDERED that the decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, denying plaintiff James Bennett's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 16th day of July, 2018.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

---

[1] Most recently, the court of appeals explained that a recent change in the SSA regulation applicable to claims filed on or after March 27, 2017 provides that SSA will not try to analyze another agency's decision, although it will consider the decision's supporting evidence. *Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017) (citing 20 C.F.R. § 404.1504). Because Bennett filed his application for benefits before 2017, the new regulation does not apply in this case.